**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-559 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEEPAK RAHEJA, *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

The 83-count indictment charges defendants, Deepak Raheja ("Dr. Raheja"), Gregory Hayslette ("Hayslette"), Frank Mazzucco ("Mazzucco"), and Bhupinder Sawhny ("Dr. Sawhny") with conspiracy to solicit, receive, offer, and/or pay healthcare kickbacks; receipt and/or offer to pay kickbacks in connection with a federal healthcare program; and other crimes associated with healthcare fraud. (Doc. No. 1 (Indictment ["Ind."]).) The charges relate to the promotion, distribution, and administration of the drug Nuedexta.

Now before the Court are two discovery motions: the motion of defendants Hayslette, Mazzuco, and Sawhny to compel discovery (Doc. No. 79 ["Def. Disc. Mot."]), and the government's motion to require compliance with Fed. R. Crim. P. 16(B).[1] (Doc. No. 90 ["Gov. Disc. Mot."].) Both motions are fully briefed. (Doc. No. 82 ["Def. Disc. Mot. Opp'n"]; Doc. No. 84 ["Def. Disc. Mot. Reply"]; Doc. No. 94 ["Def. Disc. Mot. Gov. Suppl."]; Doc. No. 91 ["Gov.

---

[1] In a third discovery-related motion, the government seeks to quash a Rule 17(c) subpoena issued to it by Dr. Raheja. (Doc. No. 115.) The parties are still in the process of briefing this and other pretrial motions, and the Court will address these motions separately in a later opinion.

Disc. Mot. Opp'n"].) The Court heard limited oral argument on the pending motions during a video status hearing on December 16, 2020 and, at the conclusion of the hearing, the Court took the motions under advisement.

Future opinions will undoubtedly more fully explore the factual background surrounding the charged healthcare conspiracy. For purposes of framing the present discovery disputes, it is sufficient to note that Avanir Pharmaceuticals, Inc. ("Avanir") developed and manufactured Nuedexta, a medication approved by the Food and Drug Administration ("FDA") solely for the treatment of Pseudo Bulbar Affect ("PBA"). PBA is a neurological condition characterized by involuntary, sudden, and frequent episodes of uncontrollable laughing and crying. Nuedexta is contraindicated for patients with certain medical conditions, including heart rhythm disorders.

Hayslette was employed by Avanir as a pharmaceutical sales representative and was responsible for the marketing of Nuedexta. Mazzucco was his supervisor. Hayslette and others promoted Nuedexta through a speaker program designed to encourage medical providers to prescribe Nuedexta for their patients. Drs. Raheja and Sawhny are medical doctors. Dr. Raheja specializes in psychiatry and neurology, and Dr. Sawhny is a neurosurgeon. It is alleged that Dr. Raheja received speaker fees and other things of value for symposiums that either never took place or had no relation to Nuedexta, and that both Drs. Raheja and Sawhny received kickbacks for prescribing Nuedexta to patients who were falsely diagnosed with PBA and, in some cases, for whom the drug was contraindicated.

I.  **DEFENDANTS' MOTION TO COMPEL DISCOVERY**

During the course of its criminal investigation, the United States Attorneys Office for the Northern District of Georgia ("NDGA") entered into a Deferred Prosecution Agreement ("DPA") with Avanir. (Def. Disc. Mot., Ex. B, beginning at 628.) In exchange for leniency, Avanir agreed to "cooperate fully … in any investigation of [Avanir] or its subsidiaries, or any of its present or former officers, directors, employees, agents, and consultants … in any and all maters relating to the conduct: (1) covered by [the DPA], the Information, and the attached Statement of Facts; (2) that was the subject of the subpoena to [Avanir] … and the related criminal investigation …; or (3) currently known to the United States regarding [Avanir's] sales, promotion, and marketing practices in connection with the drug Nuedexta." (*Id*. at 633.) Avanir's cooperation under the DPA was "subject to applicable law and regulations, as well as any applicable privilege or protection."[2] (*Id*.) The United States Attorney's Office for the Northern District Court (the "government" herein) later became a party to the DPA by way of an addendum. (DPA at 682–83.)

Between November 4, 2019 and February 12, 2020, the government made multiple discovery productions to defendants that included over 350,000 bates-stamped pages of documents and hard drives containing data seized during the execution of numerous search warrants. Included within these productions were files obtained from Avanir that the government believed to be most relevant to the case. The government also produced a "Load File" containing

---

[2] Specifically, Avanir agreed, in part, to "truthfully disclose all factual information with respect to its activities … about which [Avanir] has any knowledge and about which the [g]overnment may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of [Avanir] to provide to the [g]overnment, upon request, any document record or other tangible evidence about which the [g]overnment may inquire of [Avanir] and which is not subject to any applicable privilege or protection." (*Id*. at 633–34.)

over six million pages of documents obtained from Avanir and third parties by the NDGA through administrative subpoenas. The Load File contained a word-searchable database. To assist defense counsel's review of the database, the government subsequently gave counsel a list of 51 records custodians that Avanir searched in response to the government's subpoena as well as a list of search terms that Avanir used to search for documents responsive to the subpoenas.[3]

Defendants now seek from the government disclosure of documents, communications, and other evidence in Avanir's possession relating to the promotion of Nuedexta, the involvement of its employees in the activities therein, and information and materials discovered and/or generated during the company's internal investigation. (Def. Disc. Mot., Ex. A, at 628–29.) Defendants originally contemplated requesting these materials directly from Avanir by means of a subpoena under Fed. R. Crim. P. 17(c), but ultimately elected to seek them from the government through Fed. Rule Crim. P. 16. At the hearing, the parties agreed that the requested materials were not previously produced to, and have never been in the physical custody of, the government.

Defendants invite the Court to begin and end its consideration of their discovery motion with *United States v. Stein*, a decision by a district court from the Southern District of New York. 488 F. Supp. 2d 350 (S.D.N.Y. 2007). In *Stein*, the government and KPMG entered into a deferred prosecution agreement that grew out of an investigation by the Internal Revenue Service ("IRS") into the company's activities. In the criminal prosecution of several former KPMG

---

[3] In response to the Court's direction to develop a "roadmap" to facilitate defense counsel's review of the government's voluminous discovery productions, the government provided a list of priority Avanir custodians, that included custodial files for defendants Mazzucco and Hayslette. The government also provided defense counsel with the production letters from Avanir's counsel describing generally what was included in these productions. Included therein was a chart that summarized the contents of Avanir's production of employee cell phones.

employees that followed, the district court ruled that the defendants could rely on the agreement to compel the government to produce documents in the possession of KPMG. Painting the criminal discovery landscape with broad brush stokes, the court in *Stein* determined that, because the government could request documents from KPMG through the deferred prosecution agreement, it had "control" over the documents under Rule 16 and was required to obtain them for defendants. *Id*. at 364. Defendants advocate for a similar result here.

But this Court must apply the law to which it is bound, and it is with this law that the Court begins. Rule 16 "is the primary means of discovery in criminal cases." *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013). "Upon request, Rule 16 requires the government to 'permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items.'" *Id*. (quoting Fed. R. Crim. P. 16(a)(1)(E)). This obligation, however, "does not arise unless 'the item is within the government's possession, custody, or control *and*: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.'" *Id*. (quoting Fed. R. Crim. P. 16(a)(1)(E)).

Accordingly, "'[i]n order to trigger discovery under this provision, the papers, documents, or tangible objects must be in the actual custody or control of the federal government.'" *United States v. Skaggs*, 327 F.R.D. 165, 174 (S.D. Ohio 2018) (quoting Moore's Federal Practice, Criminal Procedure § 616.05 (2018)). Where the requested materials reside with another federal agency, the prosecution is deemed to have control over the materials "if the prosecutor has knowledge of and access to the material while it is in the possession of another

federal agency." *Id.* (citing *United States v. Happ*, No. 06-cr-129(8), 2008 WL 5101214, at *3 (S.D. Ohio Nov. 25, 2008)). This may occur when the federal agency in question "participated in the investigation that led to [the] defendant's indictment," or has "otherwise cooperated with the prosecution." *See id.*

Here, the requested documents and materials that are the subject of the present motion are not in the possession of another federal agency. Instead, they reside with a third party conspirator whose cooperation was secured through a contractual promise of leniency. In *United States v. Graham*, the Sixth Circuit addressed the question of whether the government violated the defendant's *Brady* rights by failing to disclose evidence possessed by a cooperating witness who had entered into a plea agreement. 484 F.3d 413, 414 (6th Cir. 2007). In finding no due process violation, the court specifically held that the documents were not within the control of the government and it was under no obligation to acquire them. *Id.* at 417. The court acknowledged that *Brady* imposed upon the prosecutor "'a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)). But in exempting from that duty evidence in the possession of a co-conspirator, it explained that "cooperating witnesses … stand in a very different relation to the prosecution than do police officers and other governmental agents." *Id.* (observing that while governmental agents have the means to discharge *Brady* obligations, a cooperating witness may not). Instead, a witness cooperating pursuant to the terms of a plea agreement remains an "independent actor"[,] as evidenced by the fact that the government was required to subpoena the materials from the witness and could not obtain materials that were covered by the attorney-client privilege. *Id.* at 417–18; *see also United*

6

*States v. Meregildo*, 920 F. Supp. 2d 434, 445 (S.D. N.Y. 2013) (noting that, unlike police and prosecutors, "cooperating witnesses, in most cases, have not served the law but [have] violated it. They are not concerned with the escape of guilt or suffering of innocents. Their cause is their own.")

At the status hearing, defense counsel suggested that Avanir should be treated like a federal agency working collectively with the government to prosecute the case. But Avanir is not an entity "acting on the government's behalf in the case," like the police. *See Graham*, 484 F.3d at 414 (quoting *Kyles*, 514 U.S. at 437). Rather, like the cooperating witness in *Graham*, Avanir is an independent actor with an agenda separate from (and arguably adverse to) the administration of justice. In exchange for its cooperation and the payment of a hefty fine, Avanir avoided more drastic sanctions, such as prosecution. That it must respond to the government's inquires and requests for information does not transform it into an agent of the government, acting on the government's behalf and with the government's interests in mind. *See, e.g., United States v. Norris*, 753 F. Supp. 2d 492, 530 (E.D. Pa. 2010) (rejecting similar argument that the government controlled materials in possession of private entities, noting that "[w]hile the companies entered into cooperation agreements with the Antitrust Division, they were not—by any means—agents of the Antitrust Division.")[4] And, as was the case with the cooperating

---

[4] Some courts, such as *Norris*, have taken a different tack and focused on the definition of "government" to determine whether the requested documents are controlled by the government for purposes of Rule 16. In those cases, courts have borrowed the concept of the "prosecution team" from *Brady* cases to determine whether a private entity can be considered part of the government. *See United States v. Rosenchein*, No. 16-cr-4571, 2019 WL 2298810, at *4 (D.N.M. May 30, 2019) (collecting cases applying prosecution team concept in both *Brady* and Rule 16 cases). Such an inquiry considers whether "evidence is possessed by people engaged in the investigation or prosecution of the case." *Norris*, 753 F. Supp. 2d at 531 (citing *United States v. Reyeros*, 537 F.3d 270, 284 (3d Cir. 2008)). Under this analysis, Avanir would not qualify as a member of the prosecution team as it never participated in formulating trial strategy, nor was it directed to investigate on behalf of the government. While it responded to specific requests for information from NDGA, it is well settled that "[i]nteracting with the prosecuting team, without more, does not make someone a team member." *See, e.g., Meregildo*, 920 F. Supp. 2d at 441–2, 445 (cooperating

witness in *Graham*, the documents Avanir has already produced (and which were, in large measure, provided to defendants) were in response to subpoenas issued by the government from which privileged materials could be excluded.

Relying on *Stein* and other cases employing a broad definition of the word "control" in Rule 16, defendants argue that the fact that the government can request the documents under the DPA means that the documents are in the government's control.[5] But the ability to request cannot be equated with control, otherwise the same documents could also be considered in the control of defendants, who have the right to request them through a Rule 17(c) subpoena. *See Norris*, 753 F. Supp. 2d at 530-31 (noting that, "contrary to Defendant's contention, the fact that the Antitrust Division could have possibly obtained the materials does not give rise to any discovery obligations"); *see also Meregildo*, 920 F. Supp. 2d at 445 ("*Brady* … does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel.") (quoting *United States v. Tadros*, 310 F.3d 999, 1005

---

witness not a member of the prosecution team and collecting cases holding same). Further, while the Sixth Circuit in *Graham* never reached the theoretical question of whether a co-conspirator could ever be considered part of the prosecution team, the court found that cooperators, such as Avanir, whose cooperation was contractually limited and subject to subpoena, could not be considered members of the prosecution team. *Graham*, 494 F.3d at 417–18. Though defendants complain that such an analysis is neither relevant nor necessary to the resolution of their motion, the relationship between Avanir and the government lies at the heart of this discovery dispute. And the fact that Avanir is not part of the prosecution team highlights the error of treating the government and Avanir as closely aligned for purposes of discovery.

[5] "To reach this conclusion, the court [in *Stein*] imported civil discovery principles into a criminal case." *Meregildo*, 920 F. Supp. 2d at 443. "But the Federal Rules of Civil Procedure [which define more broadly a party's right to discovery than their criminal counterpart] do not establish the boundaries of the Government's due process obligations under *Brady*. And imposing their generous reach on the Government as a constitutional mandate is a bridge too far." *Id.*; *see United States v. Tyson*, 1:18-cr-708, 2020 WL 255533, at *1 (N.D. Ohio Jan. 16, 2020) (noting that "the scope of criminal discovery is limited as compared to civil discovery") (citing *Degen v. United States*, 517 U.S. 820, 825-26, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996)).

(7th Cir. 2002)). To hold otherwise would put the government's discovery obligations at the mercy of a third party with divergent interests.[6]

Defense counsel suggested at the status hearing that defendants were required to first seek the documents from the government under Rule 16 before they could pursue them directly from Avanir by means of a Rule 17(c) subpoena. The Sixth Circuit has previously rejected such an argument, finding that "the text of neither rule requires a defendant to first come to the government for discovery under Rule 16 before seeking a subpoena for evidence under Rule 17." *Llanez-Garcia*, 735 F.3d at 494 (finding no "exhaustion" requirement in Rule 16). "Beyond the absence of textual support," the court observed that "the practical effects on the government's discovery obligations—to say nothing of the possibility of undesirable gamesmanship"—make such a position untenable *Id*. "[T]he criminal-procedure rules [simply] do not make the government the gatekeeper to evidence it may not have." *Id*.

Because the Court finds that the government never possessed or controlled the documents held by Avanir and requested by defendants, their motion to compel the same under Rule 16 is DENIED. Defendants retain the option of seeking such material directly from Avanir pursuant to a Rule 17(c) subpoena. *See e.g., United States v. Villa*, No. 3:12-cr-40, 2014 WL 280400, at *4

---

[6] It would also impose upon the government the heavy burden of discovering the universe of documents and information in Avanir's possession. Indeed, in several cases relied upon by defendants, the government had previously possessed (and was, therefore, aware of) the documents that rested with third parties. For example, in *United States v. Skeddle*, the court noted that the fact that records that were the subject of the motion to compel and in the possession of a third party "once were available to the government," meant that "there is greater justification to call on [the government] to retrieve them[.]" 176 F.R.D. 258, 262 (N.D. Ohio July 28, 1997). *See, e.g., Skaggs*, 327 F.R.D. at 175 (underscoring the fact that the government had already accessed and disclosed portions of the records that were the subject of the motion to compel). Here, there is no dispute that the government has never seen the documents requested by defendants and is unaware of the extent to which documents exist in any of the categories identified by defendants. The Court declines to stretch Fed. Rule Crim. P. 16 to impose upon the government the duty to scour the records of a private entity in search of usable discovery for defendants. *See also id*. at 174 (noting that even when the requested materials are believed to be in the hands of another federal agency, "the prosecution is not required to conduct an interagency search for evidence").

(D. Conn. Jan. 24, 2014) (distinguishing between documents held by other government agencies, from those held by a private company, and observing that the defendant can use Rule 17(c) to acquire the documents in the company's possession). Defense counsel indicated that, prior to filing the motion to compel, they had been working cooperatively with the government on a Rule 17 subpoena to Avanir. Perhaps they should resume that exercise.

## II. THE GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

By its motion, the government seeks from defendants reciprocal discovery under Rule 16(b). Particularly invoking Fed. R. Crim. P. 16(b)(1)(A), it requests an order compelling defendants' compliance with their discovery obligations and to exclude any evidence covered by Rule 16(b) not produced to the government. It further moves for an order compelling defendants to comply with Rule 16(b)(1)(C) and provide expert notices and summaries. Defendants resist the government's motion for Rule 16(b)(1)(A) discovery, arguing that their discovery duties have not yet been triggered and that, in any event, any request for immediate production is premature. They further insist that they have no discovery obligations under Rule 16(b)(1)(C), as they do not intend to offer any expert testimony at trial.

Rule 16(b)(1)(A) provides:

If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if : (i) the item is within the defendant's possession, custody or control; and (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

Fed. R. Crim. P. 16(b)(1)(A). As the rule provides, the defendant's duty to disclose is not triggered until the government complies with the defendant's discovery requests. Upon the government's request, the defendant assumes a continuing duty to promptly disclose newly

discovered evidence. The court, in its discretion, may sanction a defendant for failing to comply with his discovery obligations. *See* Fed. R. Crim. P. 16(d)(2); *see, e.g., United States v. Hamilton*, 128 F.3d 996, 1003–05 (6th Cir. 1997) (no abuse of discretion when court excluded defendant's receipts because the defendant failed to provide timely discovery to the government).

According to the government's motion, shortly after arraignment, each defendant invoked Rule 16(a) and demanded discovery from the government. In response to these demands, the government has provided discovery in several installments. On November 4, 2019 the government produced approximately 8,000 pages of documents and spreadsheets and requested that each defendant provide a 250 GB hard drive on which the government could place electronic evidence. In connection with this disclosure, the government provided an indexed cover letter. (Gov. Disc. Mot. at 821.) The government followed up this initial production with supplemental disclosures on November 19, 2012, November 20, 2019, December 10, 2019, December 30, 2019, February 12, 2020, March 19, 2020, and, most recently, April 22, 2020. (*Id*. at 821–23.) Through these disclosures, the government has produced audio and video recordings, financial records, over 350,000 pages of documents, electronic discovery, and the aforementioned Load File. (*Id*. at 822.) Notwithstanding these productions, and despite the government's repeated requests for reciprocal discovery, the government represents that, as of the date of the filing of the present motion, it has received no discovery from defendants.[7]

---

[7] During the status hearing on December 16, 2020, the government advised that Dr. Sawhny has since made a production of reciprocal discovery.

11

Initially, defendants argue that their discovery obligations under Rule 16(b) have yet to be triggered because the government "has failed to comply with its obligation under Rule 16 to *fully* provide items 'material to preparing the defense[.]'" (Gov. Dis. Mot. Opp'n at 828, emphasis added.) While defendants acknowledge that the government has "made many documents available," they "strongly believe there are many categories of documents the [g]overnment must still produce under Rule 16." (*Id.*) In support, they direct the Court to their motion to compel production of the documents from Avanir. (*Id.*, citing Def. Disc. Mot.)

As the Court has already determined, the documents that are the subject of defendants' motion to compel are not in the possession or control of the government, and thus the government has no duty to produce them. Further, notwithstanding defendants' suggestion that the government must "fully" comply with their discovery requests before their discovery obligations are triggered, the compliance required by Rule 16(b)(1)(A) is that of substantial compliance. *See United States v. Burke*, No. 3:12-cr-318, 2015 WL 1931327, at *3 (N.D. Tex. Apr. 29, 2015) (In the context of Rule 16(b)(1)(A), "compliance in this context means *substantial* compliance, not *total* compliance that is completely faultless") (citing *United States v. Swenson*, 298 F.R.D. 474, 475 (D. Idaho 2014) (emphasis in original)). Here, the record shows that the government has substantially complied with its discovery obligations under Rule 16 and is entitled to reciprocal discovery. This is not a situation where the government simply provided vast amounts of completely disorganized and inaccessible discovery and then "stat[ed] that the documents upon which [the government] intends to rely are found somewhere therein." *See United States v. Anderson*, 416 F. Supp. 2d 110, 115 (D.D.C. 2006) (quotation marks and citation omitted). Instead, the government included an index and key search words to assist

12

defendants in their review and also, to some extent, separated its productions by category. While defendants take issue with the completeness of these submissions due to the absence of documents solely within the custody and control of Avanir, they do not suggest that they are unable to navigate or make use of the material produced by the government.

This leaves the question of timing. Defendants correctly observe that Rule 16(b)(1)(A) requires a defendant to disclose documents and objects which "the defendant intends to use … in the defendant's case-in-chief at trial." (Gov. Disc. Mot Opp'n at 829, citing Fed. R. Crim. P. 16(B)(1)(A)(ii).) Defendants insist that they "do not know what exhibits, *if any*, they intend to use at trial." They explain that they are still sifting through the government's voluminous discovery productions and have requested additional documents. (*Id*., emphasis in original.) Given that the trial is still three months away, defendants maintain that they are not yet in a position to identify specific exhibits they intend to use in their cases-in-chief. *Id*.

The Court agrees that defendants are not required, at this time, to satisfy their reciprocal discovery obligations. Nevertheless, to ensure timely disclosure and to forestall future disputes, the Court will require defendants to provide any and all reciprocal discovery by no later than 30 days before trial, which is currently set to start on April 19, 2021.[8] *See, e.g., United States v. Rakhit*, No. 1:18-cr-33, 2020 WL 5530056, at *7 (N.D. Ohio Sept. 15, 2020) (in complex healthcare fraud case, defendants were required to provide reciprocal discovery within 30 days of trial). A failure to comply may result in the exclusion of evidence or witness testimony as set forth in Rule 16. Because defendants have represented that they will not be offering any expert

---

[8] At the December 16, 2020 hearing, counsel for the government essentially conceded that defendants may not yet be in a position to identify the evidence on which they intend to rely at trial. He further acknowledged that production of the requested documents 30 days in advance of the trial date would give the government sufficient time to review and prepare.

witness opinions or testimony at trial, they are relieved of any discovery obligations under Rule 16(b)(1)(C).

**IT IS SO ORDERED**.

Dated: December 30, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**