IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR559 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA E. LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| DEEPAK RAHEJA, *et al.*, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO MOTION TO DISMISS |
| Defendants. | ) | COUNTS 1, 42, AND 77 |
| | ) | |

The United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Michael L. Collyer and Megan R. Miller, Assistant United States Attorneys, hereby responds in opposition to Defendant Deepak Raheja's Motion to Dismiss Counts 1, 42, and 77. (R. 121: Motion to Dismiss, PageID 1173-83). In the Motion, Raheja argues that all three conspiracy counts in which he is charged should be dismissed because of "the lack of commonality between Dr. Raheja and [co-conspirator] Dr. Sawhny." (*Id.*, PageID 1180). As explained below, however, Raheja misstates the legal standard for dismissal, claims without any support that he is entitled to a pretrial determination of whether the government's evidence will vary from the Indictment, and falsely claims no connection to his co-conspirator, which is easily belied by the Indictment and the discovery provided by the Government. Accordingly, Raheja's Motion should be denied.

**I.    BACKGROUND**

On September 18, 2019, a federal grand jury in this district returned an 83-count indictment charging Defendants Deepak Raheja, Gregory Hayslette, Frank Mazzucco and Bhupinder Sawhny with conspiracy to violate the anti-kickback statute, substantive anti-kickback violations, conspiracy to commit health care fraud, substantive health care fraud violations, honest services mail and wire fraud, and related charges. (R. 1). Regarding the

conspiracy to violate the anti-kickback statute (Count 1), the Indictment alleged that Defendants Hayslette and Mazzucco caused, and Defendants Raheja and Sawhny received, unlawful kickbacks as inducements and in exchange for increasing Nuedexta prescriptions. (R. 1: Indictment, PageID 7). Specifically, as inducements for writing Nuedexta prescriptions, Raheja and Sawhny attended Avanir speaker's bureau programs, during which they benefitted from lavish meals. (*Id.*, PageID 8). Raheja and Sawhny and their medical staff also received other food and beverage during office visits as inducements to write Nuedexta prescriptions. (*Id.*). In exchange for these and other kickbacks, Defendants Raheja and Sawhny wrote more Nuedexta prescriptions. (*Id.*). Raheja and Sawhny billed Medicare and Medicaid for Nuedexta prescriptions for patients who did not have Pseudo-Bulbar Affect ("PBA")—the only FDA approved use for Nuedexta. (*Id.*, PageID 9). And Raheja and Sawhny submitted and caused the submission of insurance prior authorizations that falsely reflected PBA diagnoses. (*Id.*). The conspiracy to commit health care fraud (Count 42) incorporated these factual allegations. (*Id.*, PageID 87). The conspiracy to commit honest services fraud (Count 77) did the same. (*Id.*, PageID 101).

II.     LAW AND ANALYSIS

    A.     Introduction

Raheja's Motion to Dismiss is a corollary to his Motion to Sever; indeed, the two motions share identical language on the legal argument (*Kotteakos v. United States*, 328 U.S. 750 (1946)) and the alleged factual differences between Raheja and Sawhny. *Compare* (R. 118: Motion to Sever, PageID 972-77) *with* (R. 121: Motion to Dismiss, PageID 1176-82). In the Motion to Sever, Raheja asks the Court to sever his case from co-Defendant Sawhny's case because the "Indictment fails to allege that Dr. Raheja and Dr. Sawhny participated in the same act or transaction or in the same series of acts or transactions. In actuality, they did not act in concert,

or have any type of professional or personal relationship." (R. 118: Motion to Sever, PageID 974). But Raheja sheepishly acknowledges that his severance motion faces a "unique challenge" where that same purportedly disconnected co-defendant is charged in the same conspiracy, or three conspiracies, as is the case here. (*Id*., PageID 972). To circumvent that "challenge," Raheja seeks in this motion to eliminate the conspiracy counts both to enhance the viability of his severance motion and to reduce the number of charges he faces. Neither the legal nor the factual basis for his request has merit.

> **B.  There is No Legal Basis for Dismissing Conspiracy Counts on the Unsupported Assertion from One Conspirator that He Had No Connection to One of the Other Three Co-Conspirators.**

The Indictment alleges that both Raheja and Sawhny received kickbacks in exchange for increased Nuedexta prescriptions. Specifically, the government maintains that Raheja—like Sawhny—attended Avanir speaker's bureau programs and benefitted from the receipt of lavish meals; that Raheja—like Sawnhy—received food and beverage at his office as inducements to prescribe Neudexta; that Raheja—like Sawhny—wrote more prescriptions as a result of these inducements; that Raheja—like Sawhny—billed Medicare and Medicaid to pay for these prescriptions for patients without PBA; and that Raheja—like Sawhny—submitted false prior authorizations to justify these prescriptions. (*See* R. 1: Indictment, PageID 7-9). These "logically interrelated" facts form the basis for all of the legal theories advanced, and charges brought, in the Indictment. *See United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).

Raheja nevertheless relies primarily on *Kotteakos v. United States*, 328 U.S. 750 (1946), for the proposition that he is entitled to a pretrial evaluation and dismissal of the conspiracy counts because he is not connected to one of his three co-conspirators. In so doing, however, Raheja conflates the proper *charging* of defendants in a common conspiracy with *proof* of a prejudicial variance in that conspiracy at *trial*. In *Kotteakos*, 32 defendants were charged in one

conspiracy; the government admitted that it ultimately proved at least eight separate conspiracies at trial. *Id.* at 752. The Court in *Kotteakos* thus found that the defendants suffered substantial prejudice from this variance given the danger that a defendant could be convicted based on evidence of a conspiracy in which he did not participate. *Id.* That concern is not implicated here, however, where the Indictment plainly charges Raheja and Sawhny in the same conspiracies and the only "concern" is that the trial evidence will reveal multiple conspiracies, a concern that can only be vindicated after trial when the government has had the opportunity to introduce its proof of the conspiracies.

Raheja fails to cite a single case in which a charged defendant was entitled to a pretrial evaluation of the government's conspiracy evidence to determine whether in fact multiple conspiracies existed. That is because "[w]hether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury." *United States v. Schultz*, 855 F.2d 1217, 1222 (6th Cir.1988) (internal quotations omitted). It is only after trial that a court can evaluate whether the conspiracy evidence presented at trial varies from the conspiracy alleged in the indictment, which includes an examination of "the existence of a common goal, the nature of the scheme, and the overlapping of the participants in various dealings." *United States v. Warman*, 578 F.3d 320, 341-42 (6th Cir. 2009); *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003).

Raheja argues that the Indictment is fatally defective because he has no connection to one of his three co-conspirators (Sawhny). But even if his factual assertion were true—it is not, as the next section conclusively demonstrates—the law on conspiracy does not require them to be connected: "[A] single conspiracy does not become multiple conspiracies simply because each member of the conspiracy did not know every other member, or because each member did not know of or become involved in all of the activities in furtherance of the conspiracy." *United*

4

*States v. Warner*, 690 F.2d 545, 549 (6th Cir. 1982). The government need only charge (and prove) that each "conspirator had knowledge of and agreed to participate in what he knew to be a collective venture directed toward a common goal." *Smith*, 320 F.3d at 652 (citing *Warner*, 690 F.2d at 549). The Indictment clearly alleges that all conspirators engaged in the same venture of increasing Nuedexta prescriptions so that all conspirators could benefit.

   C.  **Raheja's Claimed Separation from Sawhny is False.**

Even if Raheja were entitled to a pretrial ruling on whether the Indictment improperly charged Sawhny and him in the same conspiracies, a cursory review of the facts shows they engaged in the same three charged conspiracies together. Raheja contests this, claiming that he has no factual relation to Sawhny—indeed, he claims he does not know him—and he claims that there is also no factual similarity in their roles in the alleged conspiracies. Raheja's first claim is false and the second conflates the specific *means* of carrying out his role in the conspiracy with his *role* in the conspiracy.

    1.  <u>Raheja and Sawhny had a personal and professional relationship</u>.

The government in *Kotteakos* acknowledged that defendants had no relationship with one another sufficient to establish a common conspiracy. 328 U.S. at 753-54. This is because the conspiracy in *Kotteakos*, which involved the fraudulent procurement of federal loans, centered around one individual, who acted as a broker for loan applicants who otherwise did not know each other. *Id.* Such is not the case here. Indeed, the government is perplexed by Raheja's contention that "[t]here was no collusion, collaboration, or even contact between Dr. Raheja and Dr. Sawhny. The two did not have any type of personal or professional relationship and the only common connection between the doctors is Avanir." (R. 121: Motion to Dismiss, PageID 1180). Numerous sources confirm their personal and professional relationship, but three will suffice here to negate Raheja's allegation.

5

**Sawhny's Statement.** According to Sawhny,[1] Raheja and Sawhny went to the same medical school in India. USAO_000163. They connected several decades ago via an alumni group. *Id*. They had dinner together at that time, and Sawhny met Raheja's wife. *Id*. Around 2014, Raheja reached out to Sawhny and introduced him to a former Avanir sales representative. *Id*. Sawhny and Raheja frequently attended Avanir speaker's bureau dinners at which Raheja purportedly gave presentations about Nuedexta, though Sawhny described them as more social events than professional or educational programs. *Id*.; USAO_000190. Sawhny estimated that he had attended "at least 100" such dinners, and that Hayslette or Raheja called Sawhny to invite him to the dinners. USAO_000163.

**Program Sign-in Sheets.** Raheja, and the Court, need not take Sawhny's word for his relationship with Raheja. The government also produced numerous sign-in sheets for dinner programs attended by Sawhny where Raheja was the speaker, most of them small, intimate gatherings, and sometimes with only co-Defendants Sawhny, Raheja, and Hayslette in attendance. *See generally* USAO_006797 – USAO_006924; USAO_000198. In fact, the Indictment alleges that Sawhny attended at least 30 Raheja dinner programs during co-Defendant Hayslette's tenure at Avanir alone. (R. 1: Indictment, PageID 55-56).

**Hayslette and Raheja's Text Messages**. Even if Raheja could somehow dispute or explain away Sawhny's statement and the handwritten dinner program attendance sheets, he cannot escape his own words. The government disclosed to all defendants Hayslette's text

---

[1] On November 4, 2019, the government made the first of several discovery productions to all defendants. This production included a report of an interview with Sawhny on January 18, 2017, during which Sawhny described his encounters with Raheja.

messages, a sampling of which confirms not only Raheja's relationship with Sawhny but also their conspiratorial connection:

| Date/Time | Sender | Recipient | Content |
|---|---|---|---|
| August 12, 2015 8:36 AM | HAYSLETTE | RAHEJA | Good morning. Great program last night. You did an awesome job with Dr. Sawhny and D. I really believe both will write. D said that was the best and most fun program she has ever attended. She was most thrilled with ur passion and knowledge of the disease state and product. Thanks a lot doc for knocking it out of the park!!! I will see u tonight. |
| September 22, 2015 9:18:10 AM | HAYSLETTE | RAHEJA | Hey doc. Sawhny had emergency surgery this morning. So far they have rescheduled most if not all of his day. U prob. Want to reach out to ur daughter if she is planning on coming here. I sent Sawhny a text about dinner. |
| September 22, 2015 9:18:31 AM | HAYSLETTE | RAHEJA | Did u receive ur fax from Bill? |
| September 22, 2015 9:30:04 AM | HAYSLETTE | RAHEJA | Sawhny just texted. He canceled today's pts but will be at dinner |
| September 22, 2015 10:11:30 AM | RAHEJA | HAYSLETTE | Perfect |
| September 24, 2015 9:19:39 PM | HAYSLETTE | RAHEJA | Hey doc. I hope u had a good day. I spent all day with Sawhny and it was a great day. We found another seven pts. |
| October 8, 2015 3:43:21 PM | HAYSLETTE | RAHEJA | Dr. Sawhny wanted me to text u. There's a pt. (P.M.) He's referring to u that needs to be seen on October 29th between 12-130. If u can do that, that would be great. It has to be that day bc Dr. Sawhny is seeing his wife later that day and the couple have trouble securing transportation. |
| October 20, 2015 1:20:55 PM | HAYSLETTE | RAHEJA | That's great!!! So true! What you've been doing, what U are doing is awesome! I was able to f/u with another Pt. Sawhny started about a month ago. The guy is |

7

| | | | |
|---|---|---|---|
| | | | doing great and said the medicine is working well. Sahwny wrote him some refills:D |
| November 17, 2015 5:02:05 PM | HAYSLETTE | RAHEJA | Hey doc. I hope u had a great day! Just leaving sawhny's office and heading to Giovanni's restaurant. Dr. Sawhny will be there tonight. If u can double check with J and C (dont have either cell #) that would be great. See u soon |

Thus, even if Raheja is entitled to a pretrial test of his claim that he and Sawhny had no contact and no personal or professional relationship, he falls woefully short of passing it.

  2.  <u>Raheja and Sawhny had the same roles and a shared goal</u>.

In an effort to show separate conspiracies, Raheja attempts to distinguish the *type* of kickbacks that he and Sawhny received. (R. 121: Motion to Dismiss, PageID 1180-81). According to Raheja, his alleged kickbacks came mainly in the form of speaking engagement honoraria whereas Sawhny "received kickbacks in the form of office supplies and firearms training." (*Id.*, PageID 1181). Raheja neglects to mention the common inducements that both he and Sawhny received, like dinners and food and beverages for their staff. (*See* R. 1: Indictment, PageID 58-65). In any event, these factual differences regarding some, but not all, of the types of inducements do not constitute separate conspiracies. The important point here is that Raheja and Sawhny both had identical roles and a shared goal in the conspiracies. The Manner and Means section for each of the conspiracy counts clearly alleges this. For Count 1, they both received the same inducements of coffee, breakfast, lunch and other food and beverage in return for writing more Nuedexta prescriptions and causing the submission of false billings and prior authorizations so that insurance would pay for those prescriptions, all in furtherance of the kickback conspiracy. (R. 1: Indictment, PageID 8-9). Count 42 realleges the same common Manner and Means in furtherance of a health care fraud conspiracy. (*Id.*, PageID 87-88). And

8

Count 77 realleges the same common Manner and Means in furtherance of a conspiracy to deprive patients of their right to Raheja's and Sawhny's honest services.  (*Id*., PageID 101).

### III. CONCLUSION

Raheja is not entitled to a pretrial determination of whether the government's trial evidence will vary from the Indictment and reveal the existence of multiple conspiracies.  Even if Raheja were entitled to such a pretrial determination, the Indictment and discovery show that Raheja and Sawhny were factually connected, served the same roles and shared the same goal in each of the three conspiracies in which they are charged.  Accordingly, for the foregoing reasons, the United States respectfully requests that Defendant Deepak Raheja's Motion to Dismiss Counts 1, 42, and 77 be denied.

    Respectfully submitted,

    JUSTIN E. HERDMAN
    United States Attorney

 /s/ Michael L. Collyer
    Michael L. Collyer (OH: 0061719)
    Megan R. Miller (OH: 0085522)
    Assistant United States Attorneys
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3744/3855
    Michael.Collyer@usdoj.gov
    Megan.R.Miller@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 8th day of January 2021 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                  /s/ Michael L. Collyer
                                  Michael L. Collyer
                                  Assistant U.S. Attorney