# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-559 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEEPAK RAHEJA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

On September 18, 2019, plaintiff United States of America (the "government") caused an 83-count indictment to issue charging defendants, Deepak Raheja ("Dr. Raheja" or "Raheja"), Gregory Hayslette ("Hayslette"), Frank Mazzucco ("Mazzucco"), and Bhupinder Sawhny ("Dr. Sawhny" or "Sawhny") with conspiracy to solicit, receive, offer, and/or pay healthcare kickbacks; receipt and/or offer to pay kickbacks in connection with a federal healthcare program; and other crimes associated with healthcare fraud. (Doc. No. 1 (Indictment ["Ind."]).) The charges relate to the promotion, distribution, and administration of the drug Nuedexta.

Now before the Court are the following fully briefed motions:

- The government's to quash subpoenas issued pursuant to Fed. R. Crim. P. 17(c) (Doc. No. 115 ["Quash Mot."]), which Raheja opposes (Doc. No. 123 ["Quash Opp'n"]), and to which government has replied (Doc. No. 128 ["Quash Reply"]);

- Raheja's motion for relief from prejudicial joinder (Doc. No. 118 ["Severance Mot."]), which the government opposes (Doc. No. 129 ["Severance Opp'n"]);

- Raheja's motion to dismiss Counts 1, 42, and 77 of the indictment (Doc. No. 121 ["MTD"], for which the government has filed an opposition (Doc. No. 133 ["MTD Opp'n"]);

- Raheja's motion to compel *Brady* disclosures (Doc. No. 119 ["*Brady* Mot."]), which the government opposes (Doc. No. 131 ["*Brady* Opp'n"]);

- Raheja's motion to compel discovery pursuant to Fed. R. Crim. P. 16(a)(1)(E) (Doc. No. 120 ["Rule 16 Mot."]), which the government opposes (Doc. No. 132 ["Rule 16 Opp'n"]); and

- Raheja's motion for a bill of particulars (Doc. No. 122 ["Mot. Bill"]), which the government also opposes (Doc. No. 130 ["Opp'n Bill"]).

The Court heard oral argument on the pending motions during a video hearing on January 15, 2021 and, at the conclusion of the hearing, the Court took the motions under advisement.

For purposes of framing the present motions, it is sufficient to note that Avanir Pharmaceuticals, Inc. ("Avanir") developed and manufactured Nuedexta, a medication approved by the Food and Drug Administration ("FDA") solely for the treatment of Pseudo Bulbar Affect ("PBA"). PBA is a neurological condition characterized by involuntary, sudden, and frequent episodes of uncontrollable laughing and crying. Nuedexta is contraindicated for patients with certain medical conditions, including heart rhythm disorders.

Hayslette was employed by Avanir as a pharmaceutical sales representative and was responsible for the marketing of Nuedexta. Mazzucco was his supervisor. Hayslette and others promoted Nuedexta through a speaker program designed to encourage medical providers to prescribe Nuedexta for their patients. Drs. Raheja and Sawhny are medical doctors. Dr. Raheja specializes in psychiatry and neurology, and Dr. Sawhny is a neurosurgeon. It is alleged that Dr. Raheja received speaker fees and other things of value for symposiums that either never took place or had no educational value, and that both Drs. Raheja and Sawhny received kickbacks for prescribing Nuedexta to patients who were falsely diagnosed with PBA and, in some cases, for whom the drug was contraindicated.

2

## I.    MOTION TO QUASH

In October and/or November 2020, Raheja caused subpoenas *duce tecum* to issue to United States Attorney ("USA") Justin Herdman,[1] the law firm of Baker Hostetler, and two of the firm's attorneys—Edmund Searby, Esq, and Justin Withrow, Esq. (*See, e.g.*, Doc. No. 115-1 (10/26/2020 Subpoena *Dues Tecum* issued to USA Justin Herdman ["Herdman Subpoena"]).) The subpoenas seek any and all documents and communications evidencing former USA Steven Dettelbach's involvement in the criminal investigation and charging of Raheja. They also seek documents and communications relating to Baker Hostetler's brief pre-indictment representation of Raheja.

The subpoenas are premised on the fact that on March 27, 2015, while Dettelbach was the USA for the Northern District of Ohio, he purportedly received in his capacity as USA a courtesy copy of a *qui tam* action filed against Raheja and Avanir. (*See USA ex rel. et al. v. Avanir Pharm., Inc. et al.*, Case No. 5:15-cv-611, Doc. No. 1 at 34[2] (Complaint, Certificate of Service)). After Dettelbach left the United States Attorney's Office ("USAO"), he joined the Baker Hostetler law firm wherein he was briefly retained by Raheja (beginning on March 1, 2017) to represent Raheja before he was charged in the instant action.

In his opposition brief, Raheja suggests that Dettelbach might have had an undisclosed conflict created by the fact that he had received the courtesy copy of the *qui tam* complaint and

---

[1] Since the filing of the present motion to quash, Bridgette Brennan replaced Justin Herdman and is now serving as Acting USA for the Northern District of Ohio. For the sake of convenience, the Court will continue to refer to the subpoena directed to the government as the "Herdman Subpoena."

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

that he should not have agreed to represent Raheja as a result. He opines that "the constitutionality of the Indictment … may be implicated by Dettelbach's representation of Dr. Raheja despite having a conflict of interest." (Quash Opp'n at 1262.) At the motion hearing, defense counsel clarified that Raheja was not accusing Dettelbach or any other attorney of wrongdoing or unethical behavior. Defense counsel underscored the fact that Raheja has no idea whether Dettelbach had an undisclosed conflict or whether he played *any* role in the investigation that led to the issuance of the present indictment. Nevertheless, counsel suggested that Raheja has the right to explore whether a conflict of interest existed and is entitled to use Fed. R. Crim. P. 17(c) to make this determination.

The Supreme Court has repeatedly emphasized that Rule 17(c) was not intended to expand the scope of discovery in criminal cases. *United States v. Nixon*, 418 U.S. 683, 698–99, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974). In *Nixon*, the Supreme Court required parties moving for a pretrial subpoena *duces tecum* in a criminal matter to show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the parties cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id*. at 699–700 (footnote omitted). Distilled to its essence, the Supreme Court required a showing of relevancy, admissibility, and specificity before issuance of a pretrial subpoena duces tecum. *Id*. at 700.

As an initial matter, the subpoenas issued to Baker Hostler and its attorneys fail to satisfy the second *Nixon* factor. At the motion hearing, defense counsel agreed that Raheja, like any

individual represented by a lawyer in the State of Ohio, has the right to request his client file from any attorney who has previously represented him. *See* Ohio Prof. Cond. R. 1.4(a)(4). And it is an ethical violation for an attorney to fail to produce a client's file upon request. *See, e.g., Cleveland Metro. Bar Ass'n v. Fonda*, 7 N.E.3d 1164, 1168 (Ohio 2014). Because Raheja can obtain his client file from Dettelbach or any other attorney who has previously represented him, which would certainly contain much of the information he seeks (if such information actually exists), Raheja cannot demonstrate that the requested documents are not "otherwise procurable reasonably in advance of trial by exercise of due diligence[.]" *Nixon*, 418 U.S. at 699. These subpoenas are quashed.[3]

This leaves the Herdman Subpoena. The government insists that this subpoena seeks materials that are neither relevant nor admissible and that the requests contained therein further lack the necessary specificity. The Court agrees on all fronts. Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In *United States v. Wittig*, 250 F.R.D. 548, 550–51 (D. Kan. 2008), a defendant issued a Rule 17(c) subpoena to his former employer seeking evidence regarding his former employer's role in the criminal investigation that led to his indictment. In quashing the subpoena on relevance grounds, the court noted that the "documents defendant seeks do not relate to whether or not he committed any of these or other acts alleged in the [indictment]." *Id*. at 553*; see also United States v. Skeddle*, 178 F.R.D. 167, 170 (N.D. Ohio 1996) (subpoenas seeking extent to which company

---

[3] Because the subpoenas issued to Baker Hostetler and its attorneys fail to satisfy the second *Nixon* factor, the Court will not address other deficiencies with respect to these subpoenas.

was exercising control over criminal investigation were improperly being used to develop a record to challenge the exercise of prosecutorial discretion leading to the indictment). Likewise, that the possibility exists that Attorney Dettelbach might have disregarded a conflict by virtue of any participation (which is highly speculative) that he may have had in the charging process in this case—which was not indicted until after Dettelbach left the USAO—does not make it any more probable or less probable that Raheja committed the charged crimes.

Raheja also fails to demonstrate how the requested materials would be admissible at a trial on the charges in the indictment. *See United States v. Cuthbertson*, 652 F.2d 189, 192 (3d Cir. 1981) (noting that "only materials that are 'admissible as evidence' are subject to subpoena under [Rule 17(c)]"). Again, the presence or absence of a potential conflict of interest by a former attorney has no bearing on the charges in the indictment and could not be introduced as evidence to rebut those charges. Rule 17(c) is not available to pursue documents and other materials that are not admissible at trial. *See United States v. Rand*, 835 F.3d 451, 463 (4th Cir. 2016) ("The right to defend oneself does not extend to using the power of the Court to compel third parties to provide information that may not even be admissible at trial or at a hearing or that is merely 'investigatory'") (quotation marks and citation omitted).

As to the fourth *Nixon* category, "[t]he specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents." *Wittig*, 250 F.R.D. at 552 (quotation marks and citation omitted). "The specificity requirement also prevents the moving party from using the Rule 17(c) subpoena as a license for what the Supreme Court … decried as a fishing expedition to see what may turn up." *Id*. (quotation marks and citation omitted). The government argues that the categories of information

6

sought are overly broad in that they seek any and all documents and communications on the subjects sought. It further posits that Raheja is really just on a fishing expedition as he merely speculates that a conflict may have prejudiced him somehow if Dettelbach knew of the litigation and disclosed privileged materials during the brief time he represented Raheja pre-indictment. And, in fact, defense counsel repeatedly emphasized during the motion hearing that Raheja has no idea whether there was a conflict and that the goal of the subpoena is to determine *whether* there was a conflict and *if* Raheja was prejudiced by it. This is the essence of a fishing a fishing expedition—the exploration of the possibility of the existence of an issue. But, "[t]he mere hope of discovering favorable evidence is insufficient to support issuance of a subpoena duces tecum." *Id.* The Herdman Subpoena also clearly fails the last *Nixon* requirement.

At the motion hearing, defense counsel suggested that the Court could view any documents responsive to the Herdman Subpoena *in camera* and determine, in the first instance, whether a conflict existed. But counsel failed to explain to what legitimate end such an exercise would lead. While it is true that the Sixth Amendment right to a jury trial includes the right to conflicts-free counsel, *see Wood v. Georgia*, 450 U.S. 261, 268–69, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981), the remedy for a lack of such representation is the removal of conflicted counsel. *See, e.g., United States v. McMichael*, No. 1:11-cr-180, 2011WL 5547233 (N.D. Ohio Nov. 14, 2011) (removing, as conflicted, trial counsel who was under indictment by the same USAO that was prosecuting defendant). Dettelbach no longer represents Raheja, and current defense counsel agreed at the motion hearing that Raheja has been continuously represented at the post-

indictment stage by conflicts-free counsel.[4]

And while Raheja suggests that a possible conflict could implicate the constitutionality of the indictment, there does not appear to be a *constitutional* right to conflicts-free counsel at the pre-indictment stage because there is not, in fact, a right to counsel at that point. *See United States v. Beasley*, 27 F. Supp. 3d 793, 810 (E.D. Mich. 2014) (quoting *Wood*, 450 U.S. at 271) (*"[w]here a constitutional right to counsel exists*, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest") (emphasis added). Further, as one district court within the Sixth Circuit has observed, an abuse of prosecutorial discretion in indicting, to the extent that one might exist, is generally a matter that is beyond the scope of judicial review. *Skeddle*, 178 F.R.D. at 170 (rejecting subpoena that attempted to develop a record to challenge the exercise of prosecutorial discretion leading to the indictment as "particularly ill-suited to judicial review") (quoting *Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985)).

Though it is not necessary to the resolution of the present motion to quash, the Court believes that it would be prudent to also briefly touch upon the numerous technical problems with the Herdman Subpoena—chief of which are that the subpoena is not tied to a court proceeding and it directs the documents to be produced directly to defense counsel and away from the courthouse.[5] In *United States v. Llanez-Garcia*, 735 F.3d 483, 500 (6th Cir. 2013), the

---

[4] The Court permitted Raheja to replace his initial, presumably conflicts-free, trial counsel and proceed with new counsel. The Court further extended case deadlines to afford new counsel time to familiarize themselves with the case.

[5] In Raheja's response brief, counsel suggest that they contacted chambers and were advised that the Court had no preference as to the form of Rule 17(c) subpoenas. The Court was not privy to such conversations, but court staff are instructed in such circumstances to advise counsel that the Court follows Fed. R. Crim. P. 17(c). It is not the Court's practice to provide legal advice to counsel or otherwise interpret rules and laws for counsel outside the four corners of its written opinions.

Sixth Circuit instructed district courts to interpret for themselves the contours of Rule 17(c) and determine, on a court by court basis, how they will administer and/or oversee the exercise of the Court's subpoena power. Toward that end, this Court has interpreted Rule 17(c)'s procedural mechanisms on numerous occasions. *See, e.g., United States v. Farmer*, No. 1:14-cr-362, 2015 WL 1471965, at *2–4 (N.D. Ohio Mar. 31, 2015). Rather than repeat the substance of those opinions here, the Court instructs all counsel to familiarize themselves with these rulings prior to issuing future Rule 17(c) subpoenas.

Because the Herdman Subpoena does not satisfy the *Nixon* factors for Rule 17(c) subpoenas, the government's motion to quash same is granted.

## II. MOTION FOR SEVERANCE

Raheja and his co-defendants are charged as co-conspirators in three conspiracy counts. Count 1 charges conspiracy to offer and/or receive health care kickbacks, in violation of 18 U.S.C. § 371. Count 42 charges conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1347, and Count 77 contains a charge of conspiracy to commit honest services mail fraud and wire fraud, under 18 U.S.C. § 1349. It is the government's contention that these three counts charge a single overarching conspiracy based on the same core of facts (*see* Ind. ¶¶ 1–59; and especially ¶¶ 27–59 [overt acts]), with the unifying object of benefitting co-defendants and their co-conspirators by promoting—and otherwise ensuring the continued financial success of— Nuedexta.[6]

Defendant Raheja seeks a mandatory/and or permissive severance from defendant

---

[6] For example, the object of the conspiracy in Count 1 was for Hayslette and Mazzucco "to cause the unlawful payment of kickbacks to Raheja and Sawhny and the receipt of kickbacks by Raheja and Sawhny as an inducement and in exchange for increasing Nuedexta prescriptions." (*Id.* ¶ 24, capitalization omitted.)

Sawhny and a permissive severance from defendants Hayslette and Mazzucco. He argues that joinder with defendant Sawhny is prohibited under Fed. R. Crim. P. 8(b) because the two doctors are not alleged to have engaged in the same acts or transactions. While acknowledging that the indictment alleges that the two doctors participated in the same conspiracy, it is Raheja's position that there were, in fact, separate conspiracies involving each medical provider.

Rule 8(b) permits "joinder in an indictment of defendants 'alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.'" *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (quoting Fed. R. Crim. P. 8(b)). This rule is to be "broadly construed in favor of initial joinder[.]" *Id.* (quotation marks and citation omitted). "A group of acts or transactions is logically interrelated, for instance, if the acts or transactions are part of a common scheme or plan." *United States v. Johnson*, 763 F.2d 773, 776 (6th Cir. 1985). When defendants are joined for participating in the same series of actions, such as in a conspiracy, the defendants may be charged in one or more counts and all defendants need not be charged in each count. *See United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982) ("It is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy") (quotation marks and citation omitted). "The predominate consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *Swift*, 809 F.2d at 322 (quotation marks and citation omitted). But where defendants are improperly joined, severance is mandatory. *United States v. Hatcher,* 680 F.2d 438, 441 (6th Cir. 1982).

In support of his argument that he and Sawhny did not engage in the same or similar acts,

he represents that he had neither a professional nor a personal relationship with Sawhny. (Severance Mot. at 974.) He also highlights factual differences in the indictment, noting that he is alleged to have received unlawful payments in the form of monetary kickbacks, while Sawhny received in-kind payments like firearms training and office equipment. (*Id*. at 974–5.) Additionally, he notes that Sawhny is not alleged to have participated in the speaker incentive program in the manner in which he did (i.e. Sawhny heard the presentations but never gave any or was compensated for presenting). (*Id*. at 975.)

A fair reading of the indictment belies Raheja's arguments that the two doctors are alleged to have engaged in separate and unrelated acts. It is alleged that both physicians attended Avanir speaker's bureau programs and benefitted from the receipt of lavish meals, even if Raheja was often the speaker at these functions and Sawhny was one of the attendees. Both men also received food and other non-monetary items for their respective offices. Additionally, they both allegedly benefitted from the Nuedexta prescriptions they wrote and were encouraged by these inducements and benefits to write more prescriptions. They are also both alleged to have billed Medicare and Medicaid to pay for these prescriptions for patients without PBA, and both men are alleged to have submitted false prior authorizations to justify these prescriptions. (*Ind*. at 7–9.) Their efforts to promote and prescribe Nuedexta furthered the shared goal of the conspiracy to ensure the success of the drug, which, in turn, would ensure a future stream of benefits.

Raheja analogizes the present case to *Kotteakos v. United States*, 328 U.S. 750, 66 S. Ct. 1239, 90 L. Ed. 2d  1557 (1946). There, thirty-two (32) individuals were charged in a single conspiracy whose goal was to obtain fraudulent loans through one common individual. *Id*. at 752. Nineteen (19) of the defendants went to trial and the names of thirteen (13) defendants were

11

submitted to the jury. The Court found that the evidence at trial proved not one, but at least eight different conspiracies. In finding that the seven (7) defendants who had been convicted had suffered from a non-harmless prejudicial variance, the Court underscored the fact that many of the individual loan recipients did not know each other and that the only connection between the individual defendants who obtained loans was the man who orchestrated the separate and unrelated transactions. *Id*. at 769–74. In essence, the Court found that the defendant loan recipients were simply "separate spokes meeting at a common center[.]"[7] *Id*. at 755.

Raheja's comparison to *Kotteakos* misses the mark. Unlike individual spokes operating separately and without touching the other spokes, the indictment herein alleges that the co-defendant were working together toward a common goal with the paths of the individual co-conspirators continuously intersecting. For example, the indictment identifies at least thirty (30) instances where Raheja and Sawhny attended the same speaker events at restaurants where both men received lavish meals. (Ind. ¶ 42.)

Further, text messages reproduced in the indictment underscore that the two doctors were even more than attendees at the same functions. For example, in a text message on November 2, 2015 from Hayslette to Mazzucco, he advises Mazzucco that he was currently with both Raheja and Sawhny and had "[i]nformed them of what's at stake and what I need … they're in." (*Id*. ¶ 31(u).) And in text message exchanges between Raheja and Hayslette, Raheja demonstrates that

---

[7] The Supreme Court cited, with favor, the court of appeals' observation that the participants in the unlawful enterprise were like "[t]hieves who dispose of their loot to a single receiver—a single 'fence'—[who] do not by that fact alone become confederates; they may, but it takes more than knowledge that he is a 'fence' to make them such.'" *Id*. at 1243 (citing lower court opinion).

he has more than a passing interest in the number of prescriptions Sawhny is writing.[8] (*See id.*) In fact, it is the government's theory that Raheja played a role in recruiting Sawhny to further the goals of the conspiracy. (*Id.* ¶ 35(b) & (e).) *See United States v. Johnson*, 763 F.2d 773, 775–76 (6th Cir. 1985) (rejecting defendant's contention that her only connection to the series of transactions was marriage to one of the conspirators where record showed numerous connections to the fraudulent scheme).

The Court finds that defendants Raheja and Sawhny have been properly joined in the same conspiracy. The allegations against the two doctors are legally and factually entwined and require overlapping proof. To be sure, these "logically interrelated" facts form the basis for all of the legal theories advanced, and charges brought, in the indictment. *See Swift*, 809 F.2d at 322. Moreover, joinder would certainly serve the goals of economy and convenience. *Id.*

But even where defendants have been properly joined, a district court may still choose to sever one or more defendants, or one or more counts, if joinder "appears to prejudice a defendant or the government ...." Fed. R. Crim. P. 14(a). A decision to grant or deny a motion to sever under Rule 14(a) is left to the discretion of the trial court. *See United States v. Lopez,* 309 F.3d 966, 971 (6th Cir. 2002); *United States v. Anderson,* 89 F.3d 1306, 1312 (6th Cir. 1996). "In order to prevail on a motion for [permissive] severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey,* 393 F.3d 669, 678 (6th Cir. 2005) (citing *United States v. Sherlin,* 67 F.3d 1208, 1215 (6th Cir. 1995)). "As a general rule, persons jointly indicted should be tried together because

---

[8] For example, on October 5, 2015, Raheja forwarded a text that provides that "[n]ot many additional weekly Rx's separating Gregg from the top. *Sounds like Drs. Sawhny, T.P. and Z are picking it up.*" (Ind. ¶ 34(d) (emphasis added.) The following month (on November 19, 2015), Raheja texts "Awesome Sawhney [sic] is moving up!!! We are very solid!!!" (*Id.* ¶ 34(j); *see also id.* ¶ 34(f) & (i).)

13

'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.'" *Lopez,* 309 F.3d at 971 (quoting *United States v. Phibbs,* 999 F.2d 1053, 1067 (6th Cir. 1993)). To achieve severance based on antagonistic defenses, "[t]he burden is on defendants to show that an antagonistic defense would present a conflict 'so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Warner*, 971 F.2d at 1196.

Raheja argues that there will be jury confusion from possibly antagonistic defenses, but he fails to demonstrate why a limiting instruction cannot cure any possible prejudice. *See United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) ("Even where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, will often suffice to cure any risk of prejudice."") (quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 122, L. Ed. 2d 317 (1993)); *see also United States v. Walls*, 293 F.3d 959, 966 (6th Cir. 2002) ("Juries are presumed to be capable of following instructions … regarding the sorting of evidence and the separate consideration of multiple defendants."). Given the obvious conveniences and economies to be gained from trying this complex conspiracy in one proceeding, and the lack of any reason to believe that a curative instruction will not be sufficient to protect against any spillover prejudice, the Court declines to exercise its discretion under Rule 14 to sever Raheja from his co-defendants. *See, e.g., United States v. Fernandez*, 559 F.3d 303, 317 (5th Cir. 2009) (limiting instruction that each charge against each defendant was to be considered separately was sufficient to cure any possible prejudice from joint trial). Raheja's motion for relief from joinder is denied.

### III.    MOTION TO DISMISS

Raheja's motion to dismiss is the corollary to his motion to sever in that he argues that the three conspiracy counts—Count 1 (Conspiracy to Offer/Receive Health Care Kickbacks), Count 42 (Conspiracy to Commit Health Care Fraud), and Count 77 (Conspiracy to Commit Honest Services Mail Fraud and Wire Fraud)—are defective because he has been misjoined with Sawhny in them. (*See* MTD at 1176–80.) To the extent that Rahejas's motion to dismiss is premised on a theory of misjoinder, for the reasons previously stated, his motion is denied.

Further, the government correctly observes that Raheja's motion to dismiss is improper because it "conflates the proper *charging* of defendants in a common conspiracy with *proof* of a prejudicial variance in that conspiracy *at trial*." (Opp'n at 1356, emphasis in original.) The government notes that Raheja has "failed to cite a single case in which a charged defendant was entitled to a pretrial evaluation of the government's conspiracy evidence to determine whether in fact multiple conspiracies existed." (*Id*. at 1357.) The Court is likewise unaware of any authority and finds such an analysis properly left for a possible variance argument to be raised in a post-trial motion or appeal. *See United States v. Schultz*, 855 F.2d 1217, 1222 (6th Cir. 1988) (noting that "[w]hether single or multiple conspiracies have been shown is usually a question of fact to be resolved by the jury") (quotation marks and citations omitted); *see also United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008) ("A variance to the indictment occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.") (quotation marks and citation omitted).

Nonetheless, if Raheja were entitled to such a pretrial determination of the strength of the government's case, the Court would find no reason to believe that the government's proofs at

trial will vary from the single conspiracy charged. Indeed, as set forth above, the evidence recounted in the indictment alone is consistent with a single unifying conspiracy to promote and advance Nuedexta for the purpose of unlawfully benefitting the co-defendants as co-conspirators.[9] Moreover, the government also points to Sawhny's statement, additional text messages, and event sign-in sheets that were produced during discovery that further support the government's theory that Raheja and Sawhny had a personal and professional relationship and were working in concert to further the goals of the same conspiracy. (*See* MTD Opp'n at 1358–61.)

For example, in an August 12, 2015 text message, Hayslette tells Raheja that he "did an awesome job with Dr. Sawhny and D [another physician]. I really believe both will write [prescriptions for Nuedexta]." (*Id*. at 1360 (reproducing August 12, 2015 text message).) In other text messages, Hayslette and Raheja discuss Sawhny's schedule, dinners that they will attend with Sawhny, and the identification of additional patients for which Sawhny can write prescriptions. (*Id*. at 1360–61.) In one such text, Hayslette advises Raheja that Sawhny was referring a patient to him who was a candidate for Nuedexta that Sawhny would not have time to see. (*Id*. at 1360) (reproducing October 8, 2015 text message).) A jury could find that this evidence reinforces the government's theory that Raheja helped to recruit Sawhny and had a

---

[9] At the motion hearing, defense counsel argued that Raheja did not directly benefit from Sawhny's actions. While there is no requirement that each co-conspirator directly profit from the efforts of every other conspirator, it may be the government's theory, based upon the text messages that tally the number of prescriptions written by Raheja, Sawhny, and other doctors, that all alleged co-conspirators were working toward the goal of advancing the drug which would, of course, benefit all of the co-conspirators through kickbacks and other monetary and non-monetary rewards. (*See, e.g, Ind*. at ¶ 34(d), (f)–(j).)

vested interest in his success in this shared conspiracy.[10]

For all of these reasons, Raheja's motion to dismiss Counts 1, 42, and 77 of the indictment is denied.

### IV.    MOTIONS TO COMPEL *BRADY* DISCLOSURES AND FOR RULE 16 DISCLOSURES

By his discovery motions, Raheja seeks an order compelling production of *Brady* and Rule 16 materials in the possession of Avanir, involving this case, the criminal case against Avanir initiated in the Northern District of Georgia ("N.D. GA"), and the *qui tam* action against Avanir and Raheja. (Doc. No. 119 [*Brady* Mot.]; Doc. No. 120 [Rule 16 Mot.].) His document requests focus on the relationship between Avanir and Raheja and are designed to support his defense that he subjectively believed that Avanir's speaker program was legitimate, and that this belief was the result of actions by Avanir and its employees. The Sixth Circuit has held that *Brady* and *Giglio* do not give "the defense a general right to pre-trial discovery[.]" *United States* v. *Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). Instead, due process requires only that disclosure of *Brady* and *Giglio* material be made in sufficient time to permit the defendant to make effective use of that material at trial. *Id.*

The government notes that 15 of Raheja's discovery requests are identical to requests made by his co-defendants in their Rule 16 discovery motion, and all but one request involves documents that are in the sole possession of Avanir. Relying on the Court's recent ruling, and specifically citing *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007), the government argues that Requests 1–24 and 26 must be rejected because these documents are not in the

---

[10] In fact, in a January 28, 2017 interview with the government (the substance of which was produced to Raheja during discovery), Sawhny advised that he and Raheja went to medical school together in India and connected several decades ago via an alumni group. According to Sawhny, it was Raheja who first introduced him to Avanir through a sales representative. (*Id.* at 1359.)

government's possession. Indeed, it is well settled that the government has no *Brady* or Rule 16 disclosure obligations as to documents not in its control. *Graham*, 484 F.3d at 417 ("But *Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess") (quotation marks and citation omitted); *Llanez-Garcia,* 735 F.3d at 493 (The obligation to produce materials under Fed. R. Crim. P. 16 "does not arise unless '*the item is within the government's possession, custody, or control* and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.'" (quoting Fed. R. Crim. P. 16(a)(1)(E) (emphasis added)).

On December 30, 2020, the Court denied the motion of Hayslette, Mazzuco, and Sawhny to compel discovery under Fed. R. Crim. P. 16 of the documents in Avanir's possession. (Doc. No. 127 (Memorandum Opinion and Order ["MOO"]); *see* Doc. No. 79.) The Court presumes familiarity with that decision and will not reproduce the analysis or governing case law in its entirety herein. As such, it is sufficient to note that the Court determined that the requested Avanir records, to the extent they exist, were not in the government's possession or control and, therefore, need not be produced under Fed. R. Crim. P. 16. (*Id.* at 1289–92.) The ruling is equally applicable to Raheja's motions under Rule 16 (Doc. No. 120) and *Brady* (Doc. No. 119), and defense counsel agreed as much at the January 15, 2021 hearing on Raheja's motions.

In Request 25, Raheja seeks "all depositions taken of Avanir employees in the *qui tam* litigation in the Northern District of Ohio, Case No. 5:15-cv-611." It is the government's position that, to the extent that these depositions constitute witness statements, the timing of disclosure is dictated by the *Jencks* Act, 18 U.S.C. § 3500. The government further rejects

Raheja's reliance on *United States v. Halpin*, 145 F.R.D. 447 (N.D. Ohio 1992) as authority that he is immediately entitled to these statements, noting that *Halpin* actually provides that "[t]o the extent that such evidence is useful for impeachment purposes, it is subject to disclosure at the time the witness testifies at trial, but is not subject to pretrial disclosure." *Id.* at 449 (citations omitted).

Under Rule 26.2, which incorporates the Jencks Act in the Federal Rules of Criminal Procedure, after a witness has testified on direct examination, the government or the defendant may discover the witness' pretrial statements if the statements are in the possession of the party calling the witness and relate to the subject matter of the witness' testimony. *See also* 18 U.S.C. § 3500. While it is true that early disclosure of Jencks material "avoids the inevitable delay of the trial when the material is withheld until the witness concludes his direct examination[,]" *United States v. Minksy*, 963 F.2d 870, 876 (6th Cir. 1992), the government has the right under the Jencks Act to withhold such material until the witness has testified on direct. *See id.; United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010); 18 U.S.C. § 3500(b); *see also Presser*, 844 F.2d at 1283 ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial.") (citations omitted). Further, "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act ... the terms of that Act govern the timing of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (quotation marks and citation omitted).

As the Court indicated in its Second Amended Trial Order (Doc. No. 101 ["Sec. Am. TO"]), the government is encouraged to provide Jencks Act materials as soon as practicable and,

if possible, at least by the close of proceedings the day before the witness is expected to testify. (*Id*. at 895.) But the Court cannot *require* the government to provide early Jencks Act discovery, and, therefore, Raheja's request for early production of documents in Request 25 is also denied.

Accordingly, for the reasons set forth above, as well as the reasons explained more fully in the Court's December 30, 2020 MOO (*see* Doc. No. 127), Raheja's motions for *Brady* and Rule 16 discovery are denied.

### V.     MOTION FOR BILL OF PARTICULARS

Raheja seeks particularity as to whether Avanir is an unindicted co-conspirator, as well as the identities of all other known co-conspirators who are unnamed in the indictment. He also requests "any statements of these alleged co-conspirators that the [g]overnment maintains fall under the hearsay exception set forth in Fed. R. Evid. 801(d)(2)(E)," as well as "[a]ny evidence the [g]overnment intends to introduce under Fed. Evid. R. 404(b)" and "an explanation of the non-propensity purpose for which the [g]overnment intends to introduce said evidence." (Mot. Bill at 1184.)

Rule 7(f) provides for the filing of a bill of particulars "'to minimize surprise and assist [the] defendant in obtaining information needed to prepare a defense and to preclude a second prosecution for the same crimes.'" *United States v. Crayton,* 357 F.3d 560, 568 (6th Cir. 2004) (quoting *United States v. Salisbury,* 983 F.2d 1369, 1375 (6th Cir. 1993)). "Thus, the test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise." *United States v. Musick,* 291 F. App'x 706, 724 (6th Cir. 2008) (citing FEDERAL PRACTICE & PROCEDURE § 129); s*ee United States v. Matos–Peralta,* 691 F. Supp. 780, 791 (S.D.N.Y.1988) ( "The ultimate test must

be whether the information sought is necessary, not whether it is helpful.”).

"A bill of particulars 'is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial[,]" *Crayton,* 357 F.3d at 568 (quoting *Salisbury,* 983 F.2d at 1375), nor may a defendant use a bill of particulars to discover the government's legal theory of the case. *United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir. 1983); *United States v. Marks,* 364 F. Supp. 1022, 1030 (E.D. Ky. 1973), *aff'd,* 520 F.2d 913 (6th Cir. 1975), *rev'd on other grounds,* 430 U.S. 188, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars, *see Salisbury,* 983 F.2d at 1375, and "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." *United States v. Paulino,* 935 F.2d 739, 750 (6th Cir. 1991), *suspended on other grounds by statute*, *United States v. Caselorente,* 220 F.3d 727 (6th Cir. 2000). Further, the decision to require a bill of particulars is left to the discretion of the trial court. *See Musick,* 291 F. App'x at 724; *United States v. Perkins,* 994 F.2d 1184, 1190 (6th Cir. 1993).

In this case, the lengthy indictment provides a detailed narrative as to the involvement of each participant in the charged conspiracies, supplying dates, locations, and other specifics as to the overt acts. The indictment also includes considerable detail with respect to text messages exchanged between co-conspirators, often providing complete quotes from these messages. Notwithstanding this level of detail, defendant Raheja insists he is entitled to particularity as to the identity of each co-conspirator. It is well settled that "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars." *Crayton*, 357 F.3d at 568 (citing *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991)). Further, a "defendant is not

entitled to a list of the names and addresses of the government's witnesses." *Perkins*, 994 F.2d at 1190. Here, the indictment sets forth in detail (in 107 pages) the nature of the conspiracy, as well as the actions taken by various participants to further the object(s) of the conspiracy. While the identities of some individuals—including a doctor referred to as "F.P." and other employees at Avanir—are protected by the charging instrument, their roles are laid out with detail.[11]

Additionally, as set forth above, defendants have already received considerable discovery that was accompanied by an index designed to facilitate review. The government has also produced the "Load File" containing over six million pages of documents obtained from Avanir and third parties by administrative subpoenas issued by the N.D. GA. Further, the government produced the custodial records of those individuals that defendants identified as especially pertinent to the underlying charges against them.

At the hearing, defense counsel acknowledged that between the information contained in the indictment and the discovery produced by the government, they are aware that Avanir is a likely co-conspirator. Nevertheless, Raheja seek confirmation of this fact. The Court finds Raheja is already in possession of sufficient information to make this determination and prepare

---

[11] In support of this request, Raheja relies on a number of cases from outside the Sixth Circuit that provide that the government cannot satisfy its obligation to provide particularization of the charges by simply dumping massive amounts of documents under the guise of complying with its *Brady* obligations. These cases, however, are inapposite because they involved indictments which failed to provide any information which would have put the discovery into context. *See, e.g., United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (bill of particulars warranted, in case where "some 4,000 documents" were produced, where indictment for submitting false claims for fire and burglary merely identified fifteen burglaries, leaving the defendant to guess as to which were staged); *United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (bill appropriate where government produced "over 2000,000 pieces of paper in hundreds of boxes and files" and indictment failed to identify which Medicare claims were allegedly fraudulent). The information contained in the indictments in those cases did not approach the amount of information contained in the present indictment.

for trial. In addition to the indictment and the afore-mentioned discovery, Raheja also has copies of the Deferred Prosecution Agreement ("DPA") and the accompanying Statement of Facts that sets forth, in detail, Avanir's admitted role in the charged conspiracies. There should be little doubt, at this point, as to how Avanir factors into the government's theory of the case.

Still, Raheja complains that Avanir employs over five hundred (500) individuals. At the hearing, defense counsel suggested that this fact makes the "potential pool of unnamed or unindicted co-conspirators massive." In response to the Court's inquires on this subject, the government confirmed that, at this stage of the proceedings, it is estimated that the "universe" of unindicted co-conspirators is likely fewer than 10 individuals and/or entities. Given the level of specificity existing in the indictment, along with the discovery and guidance Raheja has already received from the government, the Court finds that Raheja is not entitled at this time, to the names of the limited number of unindicted co-conspirators. *See United States v. Savin*, 00 No. CR. 451, 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (noting that the number of co-conspirators is a factor to consider in determining whether the government must disclose the identity of all co-conspirators).

The last two requests—the identification of statements of co-conspirators (and a ruling on their use at trial) and the identification of Rule 404(b) acts—are not appropriate requests in a motion for a bill and merely highlight the fact that this is really a discovery motion. Obviously, as Raheja even notes in his motion, the admissibility of co-conspirator statements is governed by the *Enright* analysis. *See United States v. Enright*, 579 F.2d 980 (6th Cir. 1978). Applying one of the methods endorsed by the Sixth Circuit in *Enright*, the Court will make the appropriate evidentiary determination as to the admissibility of such statements in advance of trial. As for

any "other acts" evidence that may be offered under Fed. R. Crim. P. 404(b), the government has agreed to provide notice well in advance of trial. While the government suggests that notice two weeks before trial would suffice, the Court finds that, for any necessary evidentiary rulings to be made during the period set aside for the consideration of *in limine* motions, the government should, where practicable, provide Rule 404(b) notices by February 26, 2021.

Because Raheja is not entitled to the information he seeks by means of a bill of particulars, his motion is denied.

## VI. CONCLUSION

For all the foregoing reasons, the government's motion to quash (Doc. No. 115) is granted. Defendant Raheja's pretrial motions (Doc. Nos. 118–22) are denied.

**IT IS SO ORDERED**.

Dated: February 8, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

24