# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19-cr-559 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| DEEPAK RAHEJA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

The indictment charged defendants, Deepak Raheja ("Dr. Raheja"), Gregory Hayslette ("Hayslette"), Frank Mazzucco ("Mazzucco"), and Bhupinder Sawhny ("Dr. Sawhny"), with conspiracy to commit healthcare fraud and related crimes involving the promotion and marketing of the dug Nuedexta, a medication developed and sold by Avanir Pharmaceuticals, Inc. ("Avanir"). (Doc. No. 1 (Indictment).) Each defendant has entered a guilty plea to one or more of the charges in the indictment and is awaiting sentencing.

Now before the Court are two motions seeking rulings relating to discovery requests propounded in a related civil action in state court. Plaintiff United States of America (the "government") has filed a response to each motion. Specifically, the Court shall address herein the following fully briefed motions:

- Doc. No. 303 (Mazzucco's Motion); *see* Doc. No. 307 (Government's Response); and

- Doc. No. 304 (Hayslette's Motion); *see* Doc. No. 306 (Government's Response).

The Court has discussed the underlying facts surrounding this criminal matter in numerous opinions and orders, and familiarity with these prior rulings is presumed. Accordingly, it is sufficient to note that as part of the healthcare fraud conspiracy, it was alleged that Mazzucco and Hayslette—while employed by Avanir—caused Drs. Raheja and Sawhny to receive unlawful kickbacks as inducements and in exchange for increasing Nuedexta prescriptions. (Doc. No. 1, at 7.[1])

On October 25, 2019, the government filed an unopposed motion for a protective order, attached to which was a proposed order. (Doc. No. 44 (Motion); *see* Doc. No. 44-1 (Proposed Order).) In its motion, the government explained that it expected that a significant percentage of the voluminous material it would be producing to defendants during discovery would contain confidential and sensitive information, including individual identifiable health information of patients seen by Drs. Raheja and Sawhney. (Doc. No. 44, at 3.) The government explained that a protective order would expedite discovery by obviating the need to review line-by-line each document to determine whether the material was discoverable and what portions needed to be redacted before production to defendants. (*Id*. at 3–4.) The government estimates that such an arduous and time-consuming endeavor would have delayed the present criminal case by more than a year. (Doc. No. 307, at 4.)

On October 31, 2019, for good cause shown, the Court granted the government's unopposed motion and issued a protective order. (Doc. No. 46 (Protective Order).) *See Alderman v. United States*, 394 U.S. 165, 185, 89 S. Ct. 961, 22 L. Ed. 2d 176 (1969) ("[T]he trial court can

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosures of the materials which they may be entitled to inspect[.]" (citing Fed. R. Crim. P. 16(e)). On May 27, 2020, defendants jointly moved for an amendment to the protective order to provide that any medical records produced by a health care institution pursuant to a subpoena or discovery request be returned to that institution at the conclusion of the criminal case or destroyed, as per the requirements of the Health Information Portability and Accountability Act ("HIPPA"). (Doc. No. 86 (Joint Motion).) The Court granted the joint motion and issued an amended protective order. (Doc. No. 88 (Amended Protective Order).)

In the Protective Order, as amended, the Court defined "Discovery Material" to include "all documents and electronically stored information disclosed by the Government to the Defense Team[2] as *Jencks* material, Criminal Rule 16, or otherwise during discovery in this case[,]" as well as "materials sought by means of Subpoena, discovery request or other lawful process." (*Id*. at 2.) Pertinent to the present motions, the Amended Protective Order states that "Discovery Material shall be used solely for the purpose of conducting pretrial, trial, and appellate proceedings in this action, with the exception of materials that belong to and/or were in the possession of Defendants and obtained by the United States pursuant to search warrant or other means." (*Id*. at 2.) The Amended Protective Order further provides that "[t]he parties recognize that Defendants may be required to use these and other materials seized by the Government, for purposes other than pretrial, trial and appellate proceedings. The parties will work together to ensure that the use of any Discovery Material at trial or any hearing will not result in the public disclosure of Protected

---

[2] The "Defense Team" was defined as "the defendants and their counsel of record in this case; employees of defense counsel of record and their associated law firms, if any; and other individuals engaged or employed by defense counsel of record in connection with this case." (*Id*. at 1–2.)

Information other information deemed to be inappropriate for public release." (*Id*. at 2–3.) The Amended Protective Order cautions that violations of the order may lead to sanctions. (*Id*. at 4.)

Under the Protective Order, as amended, the government produced millions of pages of documents and other materials to defendants over the course of numerous disclosures. Given that this case was linked to parallel civil and criminal actions in Ohio, Georgia, and Main Justice, some of the material produced involved sensitive information regarding on-going criminal investigations and active civil litigation. These disclosures also included the material the government subpoenaed from Avanir and other third-parties.

In 2020, defendants Mazzucco, Hayslette, and Dr. Raheja were named as defendants in a civil suit pending in the Cuyahoga County Court of Common Pleas. *See Marilyn Williams vs. Deepak Raheja, et al*. Case No. CV 20-928108. The plaintiff in this civil case has directed certain discovery requests to these defendants. In response to these requests, Mazzucco and Hayslette (and presumably Dr. Raheja) have asserted their Fifth Amendment rights against incrimination and, where they believed appropriate, cited the Amended Protective Order as a basis for refusing to respond fully. (Doc. No. 303, at 2; Doc. No. 304, at 2.)

Mazzucco and Hayslette now seek guidance from this Court in the form of interpretation of the Amended Protective Order and/or a determination of their ability to respond to discovery in the civil action. Specifically, Hayslette "requests a ruling on whether he is permitted to produce a copy of his Plea Agreement in this matter" in the state court civil action ahead of his sentencing in this matter, which is currently scheduled for February 15, 2023. (Doc. No. 304, at 1.) He notes that his plea agreement was filed under seal and will likely not be placed on the public docket until after sentencing. (*Id*. at 2.) He further notes that similar requests have been propounded to

Mazzucco and Raheja. (*Id.*)

The Court can dispense quickly with Hayslette's inquiry. The fact that the plea agreement was filed under seal does not stand as a barrier to its production in the parallel civil litigation in state court. In *United States v. DeJournette*, 817 F.3d 479, 484–85 (6th Cir. 2016), the Sixth Circuit held that a defendant's plea agreement is a judicial record to which the public has a First Amendment right of access. But the Sixth Circuit also held that district courts may nevertheless prevent disclosure after making a specific finding that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. at 485 (quoting *Press-Enter. Co. v. Superior Ct. (Press-Enter. I)*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)). As the government correctly observes, the posture of a criminal case may require the sealing of a plea agreement to preserve the integrity of criminal discovery or protect the identity of a cooperating defendant—such as was the case when Hayslette's agreement was first sealed. Nevertheless, the Court also agrees with the government's assessment that now that all defendants have entered guilty pleas in this case, there is no longer a compelling need to protect the secrecy of these agreements. Accordingly, the plea agreements in their entirety may be produced in the state court litigation. (*See* Doc. Nos. 187, 260, 293, 294.).[3]

Mazzucco, in turn, "requests a ruling on whether the protective order in this case terminates upon the conclusion of the" criminal matter before this Court. (Doc. No. 303, at 1.) It is the government's position that the Protective Order, as amended, remains in full force and effect even

---

[3] To the extent that Hayslette questions whether the Amended Protective Order prevents such a disclosure, the answer is "no." The Amended Protective Order does not cover documents, such as a plea agreement, that were not produced by the government during discovery. Rather, the document was created jointly by the parties following plea negotiations; its purpose was to memorialize the parties' agreement. Therefore, it does not qualify as "Discovery Material" that was "disclosed by the Government" pursuant to its pre-trial discovery obligations. (Doc. No. 88, at 2.)

after the criminal case is concluded—"until all appellate remedies have been exhausted." (Doc. No. 307, at 2.) More importantly to the issue before the Court, the government further insists the Amended Protective Order would prevent defendants from *ever* using any Discovery Material in the pending state court action, or for any purpose other than that associated with "pretrial, trial, and appellate proceedings in this [criminal] action[.]" (*Id*. at 2; *see* Doc. No. 88, at 2.)

Turning to the language of the Protective Order, as amended, the Court finds that the short answer to Mazzucco's inquiry is "no." While the Amended Protective Order envisions that Discovery Material produced pursuant to its terms may be used "solely for the purpose of conducting pretrial, trial, and appellate proceedings" in the present criminal action, it does not provide that the Order terminates when defendants have exhausted their avenues of appeal. (*See* Doc. No. 88, at 2.) Rather, the Amended Protective Order contains no expiration date. As such, the Court concludes that the Amended Protective Order will not expire once the criminal case is concluded.

More importantly, the first sentence of paragraph two of the Protective Order limits the use of the Discovery Material to *this* criminal action. (*Id*. at 2 ["Discovery Material shall be used solely for the purpose of conducting pretrial, trial, and appellate proceedings in *this* action[.]"] (emphasis added).) It is true that, later in paragraph two, the Protective Order recognizes that defendants may be required to use "these and other materials seized by" the government for "purposes other than pretrial, trial and appellate proceedings." (*Id*.) While the Court concedes that the sentence is far from a model of clarity, its purpose was simply to account for other possible uses within the present criminal case, such as a post-conviction motion to vacate under 28 U.S.C. § 2255. It was not intended to undo the Court's earlier limitation that Discovery Materials be used solely in *this* case.

*See United States v. Thompson*, 92 F.3d 292, 297 (6th Cir. 2019) (A district court has discretion to interpret its own orders (citing *Michigan v. City of Allen Park*, 954 F.2d 1201, 1213 (6th Cir. 1992)); *see also Kendrick v. Bland*, 931 F.2d 421, 423 (6th Cir. 1991) ("The District Court's interpretation of its own order is certainly entitled to great deference.")

Such a conclusion is consistent with the law governing contract interpretation. While the Amended Protective Order is not a contract, its language was proposed by the government and agreed to by defendants. *See also City of Covington v. Covington Landing, Ltd.*, 71 F.3d 1221, 1227 (6th Cir. 1995) (applying principles of contract interpretation to consent decrees). It is well settled that a Court should strive to avoid construing a contract in such a way so as to render a provision wholly meaningless. *Ceres Enterprises, LLC v. Travelers Ins. Co*. 520 F. Supp. 3d 949, 956 (N.D. Ohio 2021); *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997); *see also Ottery v. Bland*, 536 N.E.2d 651, 654 (Ohio Ct. App. 1987) (Courts "should attempt to harmonize all provisions [of a contract] rather than produce conflict in them. To that end, no provision of the contract should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both."). Any other interpretation of paragraph two would render the limitation set forth in the first sentence meaningless.

Such a conclusion is also consistent with the purpose of the Protective Order. As discussed above, the government sought a protective order as a way to accelerate its discovery productions by dispensing with the need to scrutinize each document and redact sensitive and confidential information therefrom. *See also United States v. Dixon*, 355 F. Supp. 3d 1, 8 (D.D.C. 2019) (protective orders are appropriately entered when they will "expedit[e] the flow of pretrial discovery materials" (quoting *United States v. Bulger*, 283 F.R.D. 46, 53 (D. Mass. 2012)); *see,*

7

*e.g., United States v. Fraijo*, No. 20-cr-248, 2022 WL 1018385, at *1 (D. Ariz. Apr. 5, 2022) (district court properly issued a protective order finding that "a protective order will safeguard identified personal information and expedite the discovery process"). And the government relied on the protections afforded by the Protective Order, as amended, when it produced the Discovery Material without the redaction of confidential and sensitive information. Even when the present criminal case is concluded, the Discovery Material produced to defendants will still contain the unredacted confidential and sensitive information. Only by continuing to enforce the Amended Protective Order will that information be protected. Indeed, the fact remains that defendants are only in possession of the vast majority of the Discovery Material by virtue of the Amended Protective Order. That a civil litigant now desires access to it does not change the need to protect the sensitive and confidential information contained therein—much of which involves information relating to third-parties—any more than it changes the terms of the Protective Order.

Nevertheless, there is nothing in the Amended Protective Order that precludes the litigants in the state action from obtaining these same materials directly from the third-party from which the government obtained them by means of a subpoena. Under those circumstances, the third-party would then be able to litigate its own interests in protecting any confidential, proprietary, or sensitive information via redaction or a motion to quash brought in the state action.

For all of these reasons, the Court rules that the Protective Order, as amended, does not expire at the end of the present criminal matter. It further rules that the Discovery Material, "with the exception of materials that belong to and/or were in the possession of Defendants and obtained by the United States pursuant to search warrant or other means[,]" may only be used in connection with the present criminal case and may not used for any other purpose or in any parallel civil

litigation. (*See* Doc. No. 88, at 2.) Given the Court's interpretation of the Amended Protective Order, it is unnecessary to consider the government's alternative request to modify its terms.

    **IT IS SO ORDERED**.


Dated: January 23, 2023

                                               **HONORABLE SARA LIOI**
                                               **UNITED STATES DISTRICT JUDGE**